UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
────────────────────────────X
SUNDRA FRANKS,

                    Plaintiff,

                                                    **MEMORANDUM AND ORDER**
        - against -                                  15-CV-6178 (RRM) (JO)

RAY WITTICK; and LOUIS TORINO,

                    Defendants.
────────────────────────────X
ROSLYNN R. MAUSKOPF, United States District Judge.

        Sundra Franks filed this action, pursuant to 42 U.S.C. § 1983, after a police narcotics

investigation led to his indictment and arrest.  The charges against Franks were dismissed after a

Richmond County Supreme Court judge found that the evidence before the grand jury was

legally insufficient to support the charges in the indictment ("Indictment").  Franks now alleges

false arrest, malicious prosecution, denial of a fair trial, and excessive force.  The defendants –

New York Police Department ("NYPD") Detectives Ray Wittick and Louis Torino – moved for

summary judgment on all of Franks' claims and on their qualified immunity defense.  (Defs.

Mem. (Doc. No 59-14).)  Franks opposed the motion, and the defendants replied.  (Pl. Mem.

(Doc. No. 59-29); Defs. Reply (Doc. No. 59-31).)  For the reasons set forth below, the Court

grants defendants' motion with respect to the claims for false arrest and excessive force.  The

Court denies the motion with respect to Franks' malicious prosecution and fair trial claims, as

well as defendants' assertion that they are entitled to qualified immunity.

# BACKGROUND[1]

## I.  Events Leading to the Arrest

In 2012, the NYPD conducted a long-term drug investigation on Staten Island called "Operation Mayberry," of which Detectives Wittick and Torino were the lead investigators. (Carroll Dep., Gov't Ex. B (Doc. No. 59-3) at 4–5; Wittick Dep., Gov't Ex. A (Doc. No. 59-2) at 5; Wittick Dep., Pl. Ex. 5 (Doc. No. 59-20) at 6.)  Pursuant to the investigation, police and prosecutors obtained wiretaps on several targets, monitored their calls for incoming drug orders, and then dispatched officers or detectives to surveil the consummation of those orders.   (Carroll Dep., Gov't Ex. B at 5; Molfetta Dep., Pl. Ex. 3 (Doc. No. 59-18) at 11.)  As relevant here, a man named Raumell Duran was a target of the investigation, while Franks was not.  (Wittick Dep., Gov't Ex A. at 7–8.)

At around 8:00 p.m. on April 18, 2012, while on surveillance duty of Duran near 237 Benzinger Avenue, Detectives Wittick and Torino reportedly witnessed Franks and Duran engage in a drug sale.  (Wittick Grand Jury Test., Pl. Ex. 11 (Doc. No. 59-26) at 2–3.)  Detective Wittick testified at a deposition that he observed an unknown man "touch hands with" Franks, who subsequently appeared to hand money to Duran, in what he believed was a hand-to-hand drug transaction.  (Wittick Dep., Gov't Ex. A at 7–8, 10.)  Detective Wittick concluded from this that Franks was working for Duran, (*id.* at 16), and he filed a police report, known as a "DD5," relating what he had seen: that an unknown man handed Franks a sum of U.S. currency and that Franks handed the unknown man an unknown object and turned over the cash to Duran. (Wittick DD5, Gov't Ex. E (Doc. No. 59-6) at 2.)

---

[1] The facts are taken from the parties' 56.1 Statements, the parties' depositions, and other materials in the record. The facts are uncontested unless otherwise noted.

Detective Torino, who was with Detective Wittick at the time of Franks' alleged transaction testified at a deposition and confirmed Detective Wittick's account, indicating that he, too, saw Franks engage in a hand-to-hand drug transaction with an unknown male. (Torino Dep., Gov't Ex. D (Doc. No. 59-5) at 4–5.) Detective Torino claims, in addition, that on May 1, 2012, he saw Franks act as a lookout during another drug transaction. (*Id.* at 4.) He submitted a DD5, stating that, at approximately 5:30 p.m., while conducting surveillance pursuant to an intercepted call, he observed Duran engage in a hand-to-hand transaction with an unknown man in a cab and then walk back to the sidewalk where he spoke with Franks and others. (Torino DD5, Pl. Ex. 2 (Doc. No. 59-17) at 2; Molfetta Dep. Pl. Ex. 3 at 4–16.)

Franks' account differs dramatically. Franks denies participating in any hand-to-hand drug transactions on April 18, 2012, and his testimony suggests that he did not serve as a lookout on May 1 either. (Franks Dep., Pl. Ex. 4 (Doc. No. 59-19) at 5–8.) He testified that he could not have been on Benzinger Avenue in the evenings during this time in his life. Instead, he would have been with his daughter in another Staten Island neighborhood from 6:30 or 7:00 p.m. until 10:00 p.m. (*Id.* at 7.) He admitted that he does not remember his whereabouts on April 18, 2012, and that he does not have a "specific recollection" of seeing his daughter that evening, but said that it was "routine" for him to visit his daughter in the evenings. (*Id.* at 6; Franks Dep., Gov't Ex. J (Doc. No. 59-11) at 7.) Furthermore, Franks explained that he could not have handed money to Duran or served as a lookout for him because he has not seen him in nearly a decade. (Franks Dep., Pl. Ex. 4 at 3–4.) Franks said at his deposition that he most recently saw Duran "[a]t court, when I got caught," but before that it had been "eight to ten years." (*Id.* at 3.)

## II.    Arrest and Prosecution

During Operation Mayberry, Detectives Wittick and Torino and the assistant district attorneys communicated on a daily basis. (Carroll Dep., Pl. Ex. 7 at 4–5.)  Within days of the alleged drug transactions involving Franks, Detectives Wittick and Torino had given ADA Carroll their DD5s. (*Id.*; *see also* Wittick Dep., Gov't Ex. A at 14.)  ADA Molfetta reports receiving the information sometime later. (Molfetta Dep., Gov't Ex. C (Doc. No. 59-4) at 7; Molfetta Dep., Pl. Ex. 3 at 9.)  No other officers or detectives passed along information about Franks. (Carroll Dep., Pl. Ex. 7 at 8.)

Operation Mayberry concluded in 2013, at which time the prosecutors drafted indictments of approximately forty alleged conspirators. (Carroll Dep., Pl. Ex. 7 at 9–10.)  Based only on the information provided by Detectives Wittick and Torino and the purported wiretap evidence, ADAs Carroll and Molfetta named Franks in an indictment that charged him and eleven others. (Indictment, Gov't Ex. F (Doc. No. 59-7); Molfetta Dep., Pl. Ex. 3 at 9–11; Carroll Dep., Pl. Ex. 7 at 4–8.)  The Indictment charged Franks with criminal sale of a controlled substance in the third degree and conspiracy in the fourth degree to do the same. (Indictment, Gov't Ex. F at 2, 13.)  It charged his alleged co-conspirators with similar third-degree sale or possession counts and with the same conspiracy count; and it charged one alleged co-conspirator with criminal possession of marihuana and reckless endangerment. (*Id.* at 2, 13–17.)  As to Franks' overt act, the Indictment states that on April 18, 2012, he "gave another individual a quantity of cocaine in exchange for a sum of United States currency in the vicinity of 237 Benzinger Avenue." (*Id.* at 4.)  Although the Indictment identifies numerous phone calls between other co-conspirators, it does not implicate Franks in any of them, and otherwise it does not mention him. (*Id.* at 4–12.)

ADAs Carroll and Molfetta then presented the case to the grand jury.  (Carroll Dep., Pl. Ex. 7 at 3.)  In preparation for the presentation against Franks, they met with Detectives Wittick and Torino and "ask[ed] them about their observations that were listed in the DD5."  (Molfetta Dep., Pl. Ex. 3 at 10–11; Molfetta Dep., Gov't Ex. C at 9.)  They then called both detectives to testify about the observations in each's DD5, which the detectives did.  Detective Wittick testified that he observed Franks engage in a hand-to-hand drug transaction with Duran on April 18, 2012, at around 8:00 p.m., near 237 Benzinger Avenue on Staten Island.  (Wittick Grand Jury Test., Pl. Ex. 11 at 2–3.)  Immediately afterward, Detective Torino testified that on May 1, 2012, Franks was present during a hand-to-hand transaction.  (Torino Dep., Gov't Ex. D at 4; Wittick Grand Jury Test., Pl. Ex. 11 at 3.)

On August 9, 2013, the grand jury voted a true bill against Franks.  (Indictment, Gov't Ex. F at 2.)  Based on the charges contained in the Indictment, a judge issued a warrant for Franks' arrest.  (Warrant, Gov't Ex. G (Doc. No. 59-8) at 2.)  And, later that same day, Franks was arrested.  (Arrest Report, Gov't Ex. H (Doc. No. 59-9) at 2–3.)  The arrest report lists Detective Torino as the arresting officer.  (*Id.*)

At his deposition, Franks testified that after he was arrested, he was placed in the back of a police van not near any seats.  (Franks Dep., Gov't Ex. J at 5.)  He testified that, as the van drove, he "slammed into" the wall and was "tossed" around.  (*Id.* at 4.)  Franks stated that he subsequently experienced pain in his right shoulder but that he did not complain about the pain in the van, at the precinct, or at central booking.  (*Id.* at 4–5.)

After his arrest, Franks was incarcerated for eight days before he was released pending resolution of the case.  (Dismissal Tr., Pl. Ex. 10 (Doc. No. 59-25) at 3.)  While incarcerated, Franks complained of shoulder pain during a routine medical examination.  (Med. R., Gov't Ex. I

(Doc. No. 59-10) at 7.)   He subsequently received an X-ray, which revealed "no acute fracture, subluxation or dislocation." (*Id.* at 10.)  Franks returned to court several times before the charges against him were dismissed on February 7, 2014.  (Dismissal Tr., Pl. Ex. 10 at 3.)  In dismissing the charges, the court ruled that, after inspecting the grand jury minutes, the evidence before the grand jury was legally insufficient.  (*Id.*)  The court gave the prosecutors leave to re-present the case.  (*Id.*)  However, charges were never re-filed against Franks.

## III.    Evidence Regarding Fabrication

One of the key issues in this case is Franks' claim that Detectives Wittick and Torino fabricated evidence against him.  In support of his claim, Franks points to evidence that Detective Wittick harbored personal animus toward him.

First, Detective Wittick and Franks have a history of entanglement.  Both testified that they had seen each other many times prior to the events giving rise to this case.  Detective Wittick estimated he had seen Franks "probably hundreds of times," while Franks stated that he frequently saw the detective in his police vehicle.  (Wittick Dep., Gov't Ex. A at 12; Franks Dep., Pl. Ex. 4 at 12–13.)  Detective Wittick also estimated that he had previously arrested Franks at least twice, which Franks seemed to corroborate in testimony that the detective was "always on my . . . arrest paperwork."  (Wittick Dep., Pl. Ex. 5 at 3; Franks Dep., Pl. Ex. 4 at 12.)  Notably, in 2010, following an alleged civil rights violation, Franks and other plaintiffs sued Detective Wittick and other law enforcement officials.  (Def.'s 56.1 Response (Doc. No. 59-30) ¶ 24); Stipulation of Settlement and Order of Dismissal, *Patterson v. New York*, No. 10-CV-231 (KAM) (RER) (E.D.N.Y. Aug. 8, 2012).  In August 2012, Franks and others won a settlement from the City of New York.  Stipulation of Settlement and Order of Dismissal at 3, *Patterson v. New York*, No. 10-CV-231.

Second, Franks testified at his deposition about his belief that, based on their history of interactions, Detective Wittick had a vendetta against him. He testified that, sometime in 2012, Detective Wittick announced his vendetta to the mother of Franks' child. (Franks Dep., Pl. Ex. 4 at 8.) He further claimed that Detective Wittick drove past Franks' house while Franks was out on bail after his arrest and threatened "to put [Franks] away," (*id.* at 13–14). For his part, Detective Wittick denied ever threatening or harassing Franks. (Wittick Dep., Pl. Ex. 5 at 4.)

Third, Franks claims that the detectives falsely testified that they heard Franks on the wiretaps discussing firearms with Raumell Duran and, possibly, others.[2] Detective Torino testified that he heard Franks on the wiretaps engaged in such discussions. (*Id.* at 3; Torino Dep., Pl. Ex. 6 at 3-4, 7.) He indicated that there was nothing distinctive about Franks' voice, and that he "would be extremely surprised" to learn that Franks stutters. (*Id.*)[3] ADA Molfetta also recalled such conversations by Franks about firearms, and she too, said there was nothing remarkable about Franks' voice. (Molfetta Dep., Pl. Ex. 3 at 12–13.) She could not remember how she identified his voice. (*Id.*) Detective Wittick did not testify about any such conversations, but testified that Franks had "never stuttered in my presence." CITE NEEDED. However, according to ADA Carroll, a voice-recognition recording taken at the time of Franks' arrest makes clear that Franks had a "severe stutter." (Carroll Dep., Pl. Ex. 7 at 15–16.)

Although Franks was never charged with any firearms violations because no firearms were recovered, (Defs. Reply at 7–11), Franks argues that he was not the person on the wiretap, as it is clear that the person engaged in the conversations, unlike Franks himself, did not stutter.

---

[2] While Franks claims that both detectives provided such evidence, the record contains references only to Detective Torino providing such information.

[3] With respect to Detective Torino's testimony, it is not evident from the transcript whether the basis for his knowledge is in-person conversations with Franks, listening to Franks on wiretaps, or both. (Torino Dep., Pl. Ex. 6 at 7.)

This, Franks argues, undermines the credibility of the officers – or at least Detective Torino – by falsely implicating him in broader aspects of the conspiracy.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the nonmoving party.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (collecting cases).  In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.  Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v.*

*Wyoming*, 507 U.S. 584, 590 (1993) (internal quotation marks omitted) (quoting *Celotex*, 477 U.S. at 322). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

## DISCUSSION

At the outset, the Court will briefly address Franks' first two claims. Both fail because uncontroverted evidence plainly shows Franks cannot establish an essential element of each.

## I.     False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). To make out a claim for false arrest, a plaintiff must show: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

"Where, as here, an arrest is made pursuant to a warrant issued after a grand jury indictment, there can be no claim for false arrest. Rather, the claim must be analyzed as one for [malicious prosecution]." *Stukes v. City of New York*, No. 13-CV-6166 (NGG) (VVP), 2015 WL 1246542, at *11 (E.D.N.Y. Mar. 17, 2015) (alteration in original) (citing *Singer*, 63 F.3d at 117); *see also Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) ("Under common law, only a cause of action for malicious prosecution . . . permits damages for confinement imposed

pursuant to legal process. . . . [T]he common law tort of false arrest (or false imprisonment) allows plaintiffs to seek damages from the time of detention up until issuance of process or arraignment, but not more . . . ." (internal quotation marks omitted) (citations omitted)); *Broughton v. State*, 37 N.Y.2d 451, 457 (1975) ("The distinction between false imprisonment and malicious prosecution in the area of arrest depends on whether or not the arrest was made pursuant to a warrant.").

Franks was arrested pursuant to a warrant issued after a grand jury indictment, and therefore he has no false arrest claim. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("[F]alse imprisonment ends once the victim becomes held *pursuant to [legal] process* – when, for example, he is bound over by a magistrate or arraigned on charges. . . . Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." (emphases in original) (internal quotation marks omitted) (citation omitted)). Accordingly, Franks' claim of false arrest is dismissed.

## II. Malicious Prosecution

Claims for malicious prosecution brought under Section 1983 "are substantially the same as claims for . . . malicious prosecution under state law." *Jocks*, 316 F.3d at 134 (internal quotation marks omitted) (citations omitted). A malicious prosecution claim under New York law requires the plaintiff to show that: (1) the defendant initiated a prosecution against the plaintiff; (2) the defendant lacked probable cause to believe the proceeding could succeed; (3) the defendant acted with malice; and (4) the prosecution was terminated in the plaintiff's favor. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). In addition, for a Section 1983

claim, the plaintiff must show "some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Singer*, 63 F.3d at 117.[4]

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino*, 331 F.3d at 72. An indictment by a grand jury creates a presumption of probable cause. This presumption may be rebutted only "by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (internal quotation marks omitted) (citation omitted); *see also Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010). Where officers fabricate evidence, there is sufficient evidence of a lack of probable cause to support a malicious prosecution finding. *See Richardson v. City of New York*, 02-CV-3651 (JG), 2006 WL 2792768, at *5 (E.D.N.Y. Sept. 27, 2006).

Moreover, a plaintiff must establish malice; that is, the plaintiff must show that the defendants had "a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (internal quotation marks omitted) (citation omitted). "New York courts recognize that malice is rarely established through direct evidence, and therefore allow plaintiffs to show it through circumstantial evidence." *Pettus v. City of New York*, No. 10-CV-1442 (CBA) (JO), 2011 WL 4458901, at *9 (E.D.N.Y. Aug. 23, 2011) (citing *Rounseville v. Zahl*, 13 F.3d 625, 630–31 (2d Cir. 1994)), *report and recommendation adopted*, 2011 WL 4440209 (E.D.N.Y. Sept. 23, 2011). Circumstantial evidence sufficient to show malice includes officers' "desire to retaliate against plaintiff and punish him for his prior lawsuit," combined with an absence of probable cause.

---

[4] Franks was incarcerated for eight days following his arrest, and thus suffered a "post-arraignment deprivation of liberty." *Cf. Cabrera v. City of New York*, No. 16-CV-1098 (GBD), 2017 WL 6040011, at *8 (S.D.N.Y. Dec. 4, 2017) (finding a genuine issue of material fact existed as to whether plaintiff suffered loss of liberty when he was arrested for four hours and afterward had to appear in court on criminal charges).

*Gordon v. City of New York*, No. 15-CV-2439 (CBA) (VMS), 2016 WL 10678073, at *5 (E.D.N.Y. July 22, 2016) (citations omitted); *cf. Garnett v. City of New York*, No. 13-CV-7083 (GHW), 2014 WL 3950904, at *11 (S.D.N.Y. Aug. 13, 2014) (finding evidence that plaintiff previously robbed defendant created a triable issue of fact as to malice).

Applying these principles here, and taking the evidence in the light most favorable to him, Franks has provided sufficient evidence from which a reasonable jury could find both officers liable for malicious prosecution.

### A. Initiation of Prosecution

First, on this record, the Court finds that there is sufficient evidence from which a jury could conclude that the prosecution was secured by the detectives' efforts. "To initiate a prosecution, a defendant must do more than report the crime or give testimony." *Manganiello*, 612 F.3d at 163. Instead, the defendant must "play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Id.* (internal quotation marks omitted) (citation omitted). Courts have found that the arresting officers "initiated" the prosecution "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors to aid prosecution." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *see also Bailey v. City of New York*, 79 F. Supp. 3d 424, 449 (E.D.N.Y. 2015). Both detectives were involved in the long-term investigation that led to the arrest of Franks and others, include Raumell Duran. The key – and only – evidence against Franks came from the observations of Detectives Wittick and Torino. Both Detectives say they witnessed the April 18 transaction. (Wittick Dep., Gov't Ex. A at 7–10; Torino Dep., Gov't Ex. D at 4.) Detective Wittick filed a DD5 describing what they witnessed, and Detective Torino filed a DD5 describing Franks engaging in a similar transaction nearly two weeks later,

on May 1, 2012.  (Wittick DD5, Gov't Ex. E at 2; Torino DD5, Pl. Ex. 2 at 2.)  Both ADA

Carroll and ADA Molfetta testified that they concluded that Franks was involved in the

conspiracy on the basis of these DD5s and conversations with the two detectives.  (Molfetta

Dep., Pl. Ex. 3 at 9–10; Carroll Dep., Pl. Ex. 7 at 22–26.)  Finally, Detective Wittick testified to

the grand jury about the transaction.  (Wittick Grand Jury Test., Pl. Ex. 11 at 2–3.) Given the

foregoing, the detectives' involvement was "necessary to the finding of probable cause."  *Golino*,

950 F.2d at 870 (internal quotation marks omitted) (citation omitted). [5]

## B.  Favorable Termination

Moreover, the underlying criminal matter was terminated in Franks' favor.  Plaintiff's

burden is to demonstrate a final termination that is not inconsistent with innocence. *See, e.g.*,

*Cantalino v. Danner*, 96 N.Y.2d 391, 754 N.E.2d 164, 168, 729 N.Y.S.2d 405 (N.Y. 2001)

("[T]he question is whether, under the circumstances of each case, the disposition was

inconsistent with the innocence of the accused.").  As a general matter, "[d]ismissals that have

been found to be inconsistent with innocence . . . fall into three categories: (1) misconduct on the

part of the accused in preventing the trial from going forward, (2) charges dismissed or

withdrawn pursuant to a compromise with the accused, and (3) charges dismissed or withdrawn

out of mercy requested or accepted by the accused." *Armatas v. Maroulleti*, 08-CV-310 (SJF)

---

[5] The detectives are entitled to absolute immunity from Section 1983 liability based on their testimony before the grand jury or their "preparatory activity, such as a preliminary discussion" in advance of such testimony.  *See Rehberg v. Paul*, 566 U.S. 356, 370, 375 (2012).  "However, *Rehberg* does not extend[ ] to all activity that a witness conducts outside of the grand jury room." *Salazar v. City of New York*, No. 15-CV-1989 (KBF), 2016 WL 3748499, at *5 (S.D.N.Y. July 11, 2016) (internal quotation marks omitted) (alteration in original) (quoting *Rehberg*, 566 U.S. at 370 n.1).  "Indeed, the *Rehberg* Court noted that absolute immunity does not apply to those who . . . fabricate evidence, which is exactly what plaintiff alleges [the detectives did] here." *Id.* (internal quotation marks omitted) (quoting *Rehberg*, 566 U.S. at 370 n.1); *see also, e.g.*, *Rucks v. City of New York*, 96 F. Supp. 3d 138, 149–50 (S.D.N.Y. 2015) (absolute immunity does not shield "statements by officers to the ADA in police reports that allegedly persuaded the ADA to bring felony charges"); *Garnett v. Undercover Officer C0039*, No. 13-CV-7083 (GHW), 2015 WL 1539044, at *7–8 (S.D.N.Y. Apr. 6, 2015) (absolute immunity does not shield statements in a criminal complaint).

(RER), 2010 WL 4340437, at *13 (E.D.N.Y. Oct. 19, 2010) (internal citations omitted). However, "abandonment [of a prosecution] brought about by the accused's assertion of a constitutional or other privilege, . . . such as the right to a speedy trial, does not fall within these categories, for the accused should not be required to relinquish such a privilege in order to vindicate his right to be free from malicious prosecution." *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997). The answer to whether the termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed "implies a lack of reasonable grounds for the prosecution." *Id.* (citation omitted).

Here, the action was dismissed following the trial court's review of the grand jury minutes, the court finding insufficient the evidence presented as to Franks. This is precisely the type of right that Franks should not be required to relinquish in order to vindicate his right to be free from malicious prosecution. Moreover, although the dismissal was with leave to represent, the prosecution never pursued the case against Franks. Indeed, the record includes a "Certification of Disposition Dismissal" from the Clerk of the Richmond County Supreme Court. (Certificate of Disposition Dismissal, Pl. Ex. 9 (Doc. No. 59-24) at 2.) The document states, in relevant part, that the dismissal was "a termination of the criminal action in favor of the accused." (*Id.*) [6]

### C. Bad Faith and Malice

Finally, taking the evidence in the light most favorable to Franks, a reasonable jury could conclude that the officers engaged in bad faith by fabricating evidence with malice, thereby

---

[6] To the extent that this record raises factual issues regarding the basis for the dismissal, those questions must be resolved by the jury, and in any event, is an alternative basis for denying summary judgment. *Genovese v. Cty. of Suffolk*, 128 F. Supp.3d 661, 672 (E.D.N.Y. 2015) ("Although the 'favorable termination' prong of a malicious prosecution claim ordinarily presents a question of law, this issue must be resolved by a jury if there are questions of fact regarding the basis for dismissal of the prosecution." (citation omitted).)

overcoming the presumption of probable cause. Franks' version of events is simple: He denies

that he sold drugs on April 18, 2012, and claims that Detectives Wittick and Torino must

therefore have fabricated evidence against him. He asserts the detectives, partners in a long-term

investigation, were motivated to frame him as part of Detective Wittick's vendetta against him.

(Pl. Mem. at 15–17.) In support of this narrative, Franks points to his deposition testimony that,

while on release pending the resolution of the underlying criminal charge, Detective Wittick

harassed Franks and told him he would "put [him] away." (Franks Dep., Pl. Ex. 4, at 13–14.)

Franks also points to his testimony that Detective Wittick once told the mother of Franks' child

that he harbored a vendetta against Franks. (*Id.* at 8.) Standing alone, this is of course

"insufficient to rebut the presumption of probable cause arising from a grand jury indictment."

*Bellamy*, 2017 WL 2189528, at *31. But Franks adduces other evidence.

Most significantly, Franks points to evidence that he previously sued Detective Wittick

and obtained a settlement in that suit from the City of New York. *See* Stipulation of Settlement

and Order of Dismissal at 3–6, *Patterson v. New York*, No. 10-CV-231 (KAM) (RER) (E.D.N.Y.

Aug. 8, 2012). Franks also points to the weakness of the evidence against him in the criminal

case. Of the twelve defendants named in the Indictment, Franks was the only one whose name

was not mentioned in any phone calls and whose phone number was not intercepted; and there is

no evidence that any of Franks' co-defendants ever implicated him in the alleged criminal

conviction. (Pl. Mem. at 16–17; Indictment, Gov. Ex. F at 3–12.) Finally, he emphasizes that

both detectives' credibility is undermined by the fact that their testimony that Franks did not

stutter is inconsistent with ADA Carroll's testimony that Franks had an unmistakably severe

stutter. (Wittick Dep., Pl. Ex. 5 at 3; Torino Dep., Pl. Ex. 6 at 7; Carroll Dep., Pl. Ex. at 15–16.)

Taken together, this evidence goes beyond nonspecific allegations of a vendetta and is instead

the sort of corroborating "plus" that raises a triable issue about misconduct in the procurement of an indictment. *Compare Perez*, 2007 WL 14486, at *12 (finding general allegations of vendetta insufficient as corroborating evidence), *with Boyd*, 336 F.3d at 77 (finding corroborating evidence in a police report sufficient as corroborating evidence).

Franks' testimony, together with this corroborating evidence, moves the parties' dispute "beyond a simple conflict of stories or mistaken memories and into the possibility that" Detectives Wittick and Torino did not observe Franks commit a crime "but lied in order to secure an indictment." *Brandon*, 705 F. Supp. 2d at 274. Construing all inferences in the light most favorable to Franks, and in view of the uncontested fact that his Indictment flowed directly from the detectives' actions, "a jury could reasonably find that the indictment was secured through bad faith or perjury . . . . Therefore the issue of probable cause cannot be resolved by summary judgment." *Id.* (internal quotation marks omitted) (citing *Boyd*, 336 F.3d at 77).

To be clear, this case is a much closer call with respect to Detective Torino, as the key evidence of animus focuses on Detective Wittick. And further, counsel for the detectives does not even address this evidence in their motion, which provides a basis in and of itself for denying the detectives' motion. However, it was Detective Torino that identified Franks as the person discussing firearms with Duran on at least one or more intercepted calls, thereby implicating Franks in a broader aspect of the conspiracy. And Torino's version of the events of the April hand-to-hand transaction mirrors precisely that of Detective Wittick. Taking the evidence in the light most favorable to Franks, a jury could reasonably believe that these officers, working as partners in a long-term investigation, both fabricated evidence against Franks, against whom Wittick bore animus and against whom there was no evidence other than the observations of these officers. This is therefore not a case in which the plaintiff seeks to impute one defendant's

bad faith to another.  *See Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003).  Rather, it

is a case in which the nature of the alleged wrongdoing by each officer implicates bad faith by all

involved.

For all of these reasons, Franks' malicious prosecution claim survives as to both

defendants.

## III.    Denial of the Right to a Fair Trial

"When a police officer creates false information likely to influence a jury's decision and

forwards that information to prosecutors, he violates the accused's constitutional right to a fair

trial, and the harm occasioned by such an unconscionable action is redressable in an action for

damages under 42 U.S.C. § 1983."  *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d

Cir. 1997); *see also Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000).  To establish that he was

denied a fair trial, the plaintiff must show that: the "(1) investigating official (2) fabricate[d]

evidence (3) that [was] likely to influence a jury's decision, (4) forward[ed] that information to

prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result."  *Garnett v.*

*Undercover Officer C0039* (*Garnett III*), 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti*, 124

F.3d at 130).

As relevant to this case, a fair trial claim differs from a malicious prosecution claim in

two important respects.  First, "[p]robable cause is not a defense" to a fair trial claim.  *Jovanovic*

*v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (citing *Ricciuti*, 124 F.3d at 129–30).

Second, the plaintiff is not required to show favorable termination or, indeed, any termination at

all.  As the Second Circuit recently explained in *McDonough v. Smith*,

> Because the injury for this constitutional violation occurs at the time
> the evidence is used against the defendant to deprive him of his
> liberty, whether it be at the time he is arrested, faces trial, or is
> convicted, it is when he becomes aware of that tainted evidence and

17

> its improper use that the harm is complete and the cause of action
> accrues.  Indeed, the harm—and the due process violation—is in the
> use of the fabricated evidence to cause a liberty deprivation, not in
> the eventual resolution of the criminal proceeding.

898 F.3d 259, 267 (2d Cir. 2018).[7]

Here, as described at length in the malicious prosecution analysis above, Franks has raised a triable issue of fact as to whether Detectives Wittick and Torino falsified their reports and lied in conversations with prosecutors.  *See Garnett*, 838 F.3d at 279; *Ricciuti*, 124 F.3d at 130.  It is not disputed that the detectives' actions, in turn, caused Franks to be deprived of his liberty when he was indicted for sale of a controlled substance and subsequently arrested for the same.  (*See* Indictment, Gov't Ex. F; Molfetta Dep., Pl. Ex. 3 at 9–10; Carroll Dep., Pl. Ex. 7 at 22–26); *Vitalone v. City of New York*, No. 15-CV-8525 (JGK), 2018 WL 1587591, at *8 (S.D.N.Y. Mar. 27, 2018) (permitting a fair trial claim based on disputed evidence about whether officers falsified a deposition transcript that led to plaintiff's arrest on later-dismissed charges).

As stated in the foundational fair-trial cases in this Circuit, the plaintiff must show that the fabricated evidence "[was] likely to influence a jury's decision."  *Garnett III*, 838 F.3d at 279 (citing *Ricciuti*, 124 F.3d at 130).  Courts have explained that this element is "more naturally read as requiring that the fabrication be material."  *Nnodimele*, 2016 WL 337751, at *12 (citing *Garnett II*, 2015 WL 1539044, at *8–9); *see also, e.g.*, *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 393 (E.D.N.Y. 2013) (observing that the fabrications must be "material (*i.e.*, likely to influence a jury's decision)").  The Second Circuit very recently reiterated this point, emphasizing in *McDonough* that "the injury for this constitutional violation occurs at the time the evidence is used against the defendant to deprive him of his liberty, whether it be at the time he is arrested, faces trial, or is convicted."  *McDonough*, 898 F.3d at 267.  In other words, the

---

[7] As set forth above, the principles enunciated in *Rehberg v. Paulk* also apply to Franks' fair trial claim.

fabricated evidence need not influence a jury, so long as it materially influences the process by which defendant is deprived of liberty. Here, there is no dispute that the detectives' DD5s were the only basis for procuring Franks' indictment and arrest. (Molfetta Dep., Pl. Ex. 3 at 9–11; Carroll Dep., Pl. Ex. 7 at 4–8.) As such, Franks has pointed to sufficient evidence of materiality.

The Court concludes that Franks has raised a triable issue of fact as to whether Detectives Wittick and Torino deprived Franks of his constitutional right to a fair trial. *See Garnett*, 838 F.3d at 279; *Ricciuti*, 124 F.3d at 130. Accordingly, defendants' motion for summary judgment dismissing this claim is denied.

## IV. Qualified Immunity

Defendants argue that they are entitled to qualified immunity from the false arrest, malicious prosecution, and fair trial claims on the ground that they had at least arguable probable cause to arrest Franks. (Defs. Mem. at 21–24.)[8] They are not. As explained above, Franks raised a triable issue of fact as to whether defendants lacked probable cause because they fabricated the evidence of his crime. Since well before the time of Franks' arrest, it has been "firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." *Zahrey*, 221 F.3d at 355. If a jury could find that Detectives Wittick and Torino fabricated evidence, it necessarily could also find that no officer could have "reasonably believed that probable cause existed in light of well-established law." *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001). Therefore, there is a triable issue of fact as to defendants' entitlement to qualified immunity, and their motion for summary judgment on this issue is denied.

---

[8] Defendants do not purport to raise a qualified immunity defense to the excessive force claim, and accordingly the Court does not address this issue. In any event, any need to assert the defense is mooted by the dismissal of the excessive force claim.

## V.     Excessive Force

Courts analyze claims that law enforcement officers used excessive force in the course of an arrest under the Fourth Amendment reasonableness standard.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Brown v. City of New York*, 798 F.3d 94, 107 (2d Cir. 2015).  To determine whether the use of force was reasonable, a court must answer "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Brown*, 798 F.3d at 107 (quoting *Graham*, 490 U.S. at 397).

If a court finds an officer acted unreasonably, it must also determine whether the officer's actions caused the plaintiff's injury.  "A § 1983 action, like its state tort analogs, employs the principle of proximate causation." *Townes*, 176 F.3d at 146.  "It is not enough to show a plaintiff's injury would not have occurred 'but for' a defendant's actions.  Rather, the Court must consider the 'foreseeability or the scope of the risk created by the predicate conduct' and whether there was 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Tolentino v. City of Yonkers*, No. 15-CV-5894 (VB), 2017 WL 4402570, at *5 (S.D.N.Y. Oct. 2, 2017) (first quoting *Townes*, 176 F.3d at 147; then quoting *Cty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1548–49 (2017)).

Franks' excessive force claim fails because Franks does not point to any evidence that the two defendants, in particular, used excessive force or that their actions caused his shoulder injury.  In his second amended complaint, he alleges that Detective Torino did not put a seat belt on him and that Detective Wittick purposely drove recklessly to cause Franks injury by causing his body to slam against the vehicle.  (Second Am. Compl. (Doc. No. 36) ¶¶ 19–20.)  The evidence in the summary judgment record, however, shows nothing about the defendants' role in these alleged actions.  It shows only that Detective Torino was listed as the arresting officer.

(Arrest Report, Gov't Ex. H at 2–3.)  Critically, it does not reveal whether other officers – including Detective Wittick – assisted in the arrest, who placed Franks in the back of the van, or who drove the van.  As such, it does not reveal any "injurious conduct" by Torino or Wittick.  *See Tolentino*, 2017 WL 4402570, at *5 (emphasizing that plaintiff must show a "direct relation between the injury asserted and the injurious conduct alleged" (citations omitted)).

While Franks did not have to show serious injury for his excessive force claim to survive, he needed to point to some evidence of a "direct relation between the injury asserted and the injurious conduct alleged."  *Tolentino*, 2017 WL 4402570, at *5.  Because Franks did not make this showing, his excessive force claim is dismissed.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (Doc. No. 59) is granted as to plaintiff's causes of action for false arrest and excessive force.  The motion is denied as to plaintiff's malicious prosecution and fair trial claims, and as to defendants' qualified immunity defense.

This action is re-committed to the assigned magistrate judge for all remaining pre-trial proceedings, including settlement discussions if appropriate.

SO ORDERED.

Dated: Brooklyn, New York
      September 28, 2018

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge